# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

INFINITY CAPITAL INCOME FUND,
LLC,

     Plaintiff,

v.            Case No: 6:24-cv-1869-JSS-LHP

JUSTIN NGUYEN,

      Defendant

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

  Before the Court is Plaintiff's Motion for Default Judgment.  Doc. No. 18.
The matter has been referred to the undersigned and is ripe for review.  For the
reasons discussed herein, the undersigned will respectfully recommend that the
motion be granted in part as to liability, and denied without prejudice in part and
deferred on the issue of damages.

## I.  BACKGROUND.

  On October 17, 2024, Plaintiff Infinity Capital Income Fund, LLC ("Plaintiff")
instituted this lawsuit against Defendant Justin Nguyen ("Defendant"), seeking to
recover damages for claims of fraud, conversion, and unjust enrichment.   Doc. No.

1.   In sum, according to the complaint, Defendant, by himself or in concert with others, fabricated a transaction and created a fraudulent and non-existent title company (Ocean X Title), induced Plaintiff to transfer over $1 million to the fraudulent title company for the non-existent transaction, and then absconded with Plaintiff's funds.  *Id.* ¶¶ 7–17.

Specifically, Plaintiff is a lender involved in the business of making commercial loans secured by real property.  *Id.* ¶ 7.  On August 30, 2024, Defendant contacted Plaintiff seeking short-term financing in connection with real estate transactions, representing that Defendant was purchasing three properties and then reconveying them to a third party.  *Id.* ¶ 8.  Plaintiff expressed interest, and Defendant referred Plaintiff to a title company, Ocean X Title, to close the transactions.  *Id.* ¶ 9.  However, on information and belief, Ocean X Title did not exist.  *Id.* [1]  On September 3, 2024 and September 23, 2024, Defendant, falsely purporting to be Edward Ibrahim at Ocean X Title, provided Plaintiff with instructions to wire funds to two different banks (Metropolitan Commercial Bank and Thread Bank), causing Plaintiff in reliance thereon to wire $425,000.00 and $90,000.00 to Metropolitan Bank on September 4, 2024, and $724,000.00 to Thread

---

[1] With Plaintiff's motion for default judgment, Plaintiff submits that while Ocean X Title did not initially exist when Defendant asked that the funds be directed to Ocean X Title, it has discovered that Defendant thereafter formed an entity Ocean X Title, Inc. on September 12, 2024, for purposes of receiving the funds described in the complaint.  Doc. No. 18, at 4; Doc. No. 18-2 ¶¶ 6–7.

Bank on September 24, 2024.    *Id.* ¶¶ 12–14.    Plaintiff directed the individual purporting to be Ibrahim that the funds were not to be disbursed until Plaintiff reviewed and approved the signed closing packages.    *Id.* ¶ 15.    However, after the funds were delivered, Defendant cut off all contact with Plaintiff and absconded with the funds.    *Id.* ¶ 16.    Although Plaintiff attempted to reverse the wire transfers, Plaintiff was only able to recover $635.73 from Thread Bank.    *Id.* ¶ 17.

Plaintiff served Defendant with a copy of the summons and complaint by service on Defendant's co-resident on October 24, 2024.    Doc. No. 14.    Defendant has not responded to the complaint or appeared in this action, however. Accordingly, on Plaintiff's motion, Clerk's default was entered against Defendant. Doc. Nos. 15–17.    Now, Plaintiff moves for default judgment.    Doc. No. 18.

## II.    STANDARD OF REVIEW.

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment.    First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default.    Fed. R. Civ. P. 55(a).    Second, after obtaining clerk's default, the plaintiff must move for default judgment.    Fed. R. Civ. P. 55(b). Before entering default judgment, the court must ensure that it has jurisdiction over the claims and parties, and that the well pleaded factual allegations of the

complaint, which are assumed to be true, adequately state a claim for which relief may be granted. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.").[2]  Therefore, in considering a motion for default judgment, a court must "examine the sufficiency of plaintiff's allegations to determine whether plaintiff is entitled to" a default judgment. *Fid. & Deposit Co. of Md. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

A complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   This analysis applies equally to motions for default judgment.  *De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, at *5 (M.D. Fla. Nov. 24, 2009) (citations omitted).

If the plaintiff is entitled to default judgment, then the Court must consider whether the plaintiff is entitled to the relief requested in the motion for default

---

[2] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

judgment. If the plaintiff seeks damages, the plaintiff bears the burden of demonstrating entitlement to recover the amount of damages sought in the motion for default judgment. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008). Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages. *See Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1543–44 (11th Cir. 1985). However, no hearing is needed "when the district court already has a wealth of evidence . . . such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also Wallace*, 247 F.R.D. at 681 ("[A] hearing is not necessary if sufficient evidence is submitted to support the request for damages.").

**III.   ANALYSIS.**

   A.   <u>Jurisdiction</u>.

   Plaintiff alleges that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the parties are completely diverse and the amount in controversy exceeds $75,000.00, exclusive of interests and costs. Doc. No. 1 ¶¶ 2–4. The complaint sufficiently alleges that the amount in controversy exceeds the jurisdictional threshold. *Id.* ¶¶ 1, 4, 17. Plaintiff has also adequately

demonstrated diversity of citizenship, in that Plaintiff is an LLC, its sole member is a natural person who is a citizen and domiciliary of Maryland, and Defendant is domiciled in Florida.  *Id.* ¶¶ 2–3; Doc. No. 2, at 2.  Accordingly, the Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1).  *See also Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("[A] limited liability company is a citizen of any state of which a member of the company is a citizen.").

The Court also has personal jurisdiction over Defendant, who is alleged to be a resident and citizen of Florida.  Doc. No. 1 ¶¶ 3, 5.  *See generally Klayman v. Cable News Network*, No. 22-12480, 2023 WL 2027843, at *2 (11th Cir. Feb. 16, 2023) (explaining that a defendant would be subject to general personal jurisdiction in Florida if it is a citizen of the state pursuant to Fla. Stat. § 48.193(2))[3]; *see also* Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.").

B.   <u>Clerk's Default/Service of Process</u>.

Defendant was served by delivery of the summons and complaint to "Diam Nguyen" as "co-resident" at Defendant's residence in Daytona Beach.  Doc. No.

---

[3] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36-2.

14.[4]  Service on Defendant was proper.   Fed. R. Civ. P. 4(e)(2)(B); Fla. Stat. §

48.031(1)(a).    Accordingly, Clerk's default was properly entered against

Defendant.   *See* Doc. Nos. 14–17; Fed. R. Civ. P. 55(a).

C.    Liability on Fraud Claim (Count I).[5]

The elements of a common law fraud claim include:

> (1) a false statement of fact, (2) known by the person making the
> statement to be false at the time it was made, (3) made for the purpose
> of inducing another to act in reliance thereon, (4) action by the other
> person in reliance on the correctness of the statement, and (5) resulting
> damage to the other person.

*Five Star Life Ins. Co. v. Simpson*, No. 3:15-cv-483-J-32JRK, 2015 WL 9582552, at *3

(M.D. Fla. Nov. 25, 2015), *report and recommendation adopted*, 2015 WL 9488952 (M.D.

Fla. Dec. 30, 2015) (citing *Kelly v. Nelson, Mullins, Riley & Scarborough, L.L.P.*, No.

8:01-cv-1176-T-27MAP, 2002 WL 598427, at *7 (M.D. Fla. Mar. 20, 2002)).   Fraud

claims must also satisfy the heightened pleading requirements of Federal Rule of

Civil Procedure 9(b), setting forth:

> (1) precisely what statements were made in what documents or oral
> representations or what omissions were made, and (2) the time and
> place of each such statement and the person responsible for making

---

[4]  According to the return of service, Diam Nguyen advised the process server that Defendant "is out in Vietnam for another month or two," and the process server "left copy of documents with resident per request of the client."   Doc. No. 14.

[5]  Plaintiff applies Florida law to all if its claims, which the undersigned deems appropriate absent any indication that any other forum's law should apply.   Doc. No. 18. *See James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 n.1 (11th Cir. 2008) ("In this diversity action initiated in Florida, we apply the substantive law of the forum state." (citing *Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 571 (11th Cir. 1991))).

(or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Id.* (citations omitted).

Here, Plaintiff meets these requirements. The complaint alleges that: (1) Defendant made a false statement on August 30, 2024 by contacting Plaintiff seeking financing in connection with a non-existent real estate transaction; (2) the transactions were known to be false and non-existent by Defendant; (3) the false statement was made for the purposes of inducing Plaintiff to act thereon; (4) Plaintiff relied on Defendant's statements in wiring the funds at issue; and (5) Plaintiff suffered resulting damage when Defendant absconded with the funds. Doc. No. 1 ¶¶ 7–17. Defendant further put Plaintiff in contact with a fraudulent title company Ocean X Title, and on September 3, 2024 and September 23, 2024, falsely acted as an employee of Ocean X Title, Ibrahim, to cause the fraudulent real estate transactions and induce Plaintiff to wire funds to accounts at Metropolitan Bank and Thread Bank purportedly belonging to Ocean X Title. *Id.* Accordingly, default judgment on the fraud claim (Count I) is proper. *See, e.g.*, *Smallwood v. Cormier*, No. 8:12-cv-879-T-23AEP, 2012 WL 12918359, at *1 (M.D. Fla. Dec. 6, 2012) (similar allegations sufficient to support fraud claim on default judgment); *see also Am. Com. Bank, NA v. Progress Leasing, LLC*, No. 2:23-CV-117-AMM, 2023 WL 8518216, at *4 (N.D. Ala. Aug. 22, 2023) (same).

D.    <u>Liability on Conversion Claim (Count II)</u>.

"In Florida, the tort of [c]onversion is an unauthorized act which deprives another of his property permanently or for an indefinite time.   The essence of the tort is not the acquisition of the property; rather, it is the wrongful deprivation." *Marine Transp. Servs. Sea-Barge Grp., Inc. v. Python High Performance Marine Corp.*, 16 F.3d 1133, 1140 (11th Cir. 1994) (internal quotation marks omitted) (quoting *Nat'l Union Fire Ins. Co. v. Carib Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir. 1985)).   Under Florida law, money may be the subject of a conversion action.   *See, e.g.*, *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. Dist. Ct. App. 1970).

Here, the same facts establishing the fraud claim also establish the conversion claim, in that Defendant wrongfully deprived Plaintiff of its funds through the scheme involving Ocean X Title.   Doc. No. 1 ¶¶ 7–17.   Accordingly, default judgment on liability for the conversion claim (Count II) is proper.   *See, e.g.*, *Smallwood*, 2012 WL 12918359, at *1 (similar allegations sufficient to support conversion claim on default judgment).

E.    <u>Liability on Unjust Enrichment Claim (Count III)</u>.

Under Florida law, "[t]he essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without

paying the value thereof." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006) (citing *Swindell v. Crowson,* 712 So. 2d 1162, 1163 (Fla. Dist. Ct. App. 1998)).

Again, Plaintiff has established the elements of unjust enrichment for the same reasons as the fraud and conversion claims, in that Defendant wrongfully deprived Plaintiff of its funds and absconded with those funds through the scheme involving Ocean X Title. Doc. No. 1 ¶¶ 7–17. Accordingly, default judgment on the unjust enrichment claim (Count III) is proper. *See*, *e.g.*, *HostLogic Zrt. v. GH Int'l, Inc.*, No. 6:13-cv-982-Orl-36KRS, 2014 WL 2968279, at *8 (M.D. Fla. June 30, 2014) (granting default judgment on unjust enrichment claim where complaint alleged that plaintiff wired money to defendant's account, defendant voluntarily accepted and retained the funds, and plaintiff received nothing of value from defendant in exchange for the benefit conferred, and noting that "[i]n such circumstances, and absent any objection from [defendant], this is sufficient to establish that the circumstances render [defendant]'s retention of the benefit inequitable unless [defendant] pays [plaintiff] the value of the benefit.").

F.    <u>Damages</u>.

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations related to damages are not deemed admitted and the Court must determine the amount and character of damages to be awarded." *Glanzrock v.*

*Patriot Roofing Indus., Inc.*, No. 8:07-cv-535-T-33MAP, 2009 WL 179634, at *2 (M.D. Fla. Jan. 26, 2009) (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F.Supp.2d 1342, 1346 (M.D. Fla. 1999)).   "[D]amages may be awarded to a non-defaulting party as part of the default judgment only where 'the record adequately reflects the basis for the award.'"   *United States ex rel. Chabot v. D&G Disc. Homes, LLC*, No. 6:06-cv-1536-Orl-35KRS, 2011 WL 13202177, at *2 (M.D. Fla. June 16, 2011) (quoting *Adolph Coors*, 777 F.2d at 1544).

By the motion for default judgment, Plaintiff seeks to recover the funds related to the fraudulent wire transactions, to include a total of $1,238,364.27 in actual damages on the fraud claim;[6]  $2,476,728.54 in punitive damages on the fraud claim; the same amounts of actual and punitive damages on the conversion claim; $1,238,364.27 in damages on the unjust enrichment claim; and prejudgment and post-judgment interest thereon as well as taxable costs.   Doc. Nos. 18, at 12; *see also* Doc. No. 1, at 6–8.

On review, Plaintiff provides insufficient information for the Court to award damages on its motion alone.   For one, as to actual damages, the damages appear to be duplicative across the claims, but Plaintiff provides no explanation in this

---

[6] Calculated as the total wire transfers of $ 1,239,000.00 ($425,000.00 + $90,000.00 + $724,000.00) minus the $635.73 recovered from Threat Bank.   *See* Doc. No. 1 ¶¶ 13–17; Doc. No. 18-1 ¶¶ 10–13, 17.

regard, and instead, requests these damages be awarded separately as to each claim. *See* Doc. No. 18, at 12.    *See also Dassault Systemes Solidworks Corp. v. Linear Eng'g & Mfg. Corp.*, No. 8:23-cv-1444-KKM-AEP, 2024 WL 2874842, at *7 (M.D. Fla. May 21, 2024), *report and recommendation adopted*, 2024 WL 3289519 (M.D. Fla. July 3, 2024) ("[B]ecause 'no duplicative recovery of damages for the same injury may be had,' Plaintiff is entitled to only a single award of damage[s] regardless of the theory under which it is awarded." (citing *Lukes's Cataract and Laser Institute, P.A. v. Sanderson*, 573 F.3d 1186, 1204 (11th Cir. 2009))).

For another, as to the claims for punitive damages, Plaintiff fails to provide adequate support.    Plaintiff states in entirety:    "Due to the intentional, egregious, and fraudulent nature of [Defendant's] conduct, as described herein, [Plaintiff] also is entitled to recover punitive damages in an amount of $2,476,728.54, which is two (2) times the amount of compensatory damages owed."    Doc. No. 18, at 9, 11.    In a footnote, Plaintiff provides citation to one case from the District of Maryland for the proposition that punitive damages are properly awarded at default judgment ranging from approximately half to double the compensatory damages awarded. *Id.* at 9, n.1 (citing *Mahoney v. iProcess Online, Inc.*, 681 F. Supp. 3d 446, 452 (D. Md. 2023)).    *Mahoney* applied Maryland law, however, and Plaintiff fails to explain why Maryland law would apply to its punitive damages claim here.    *Id.*

Under Florida law, "no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." Fla. Stat. § 768.72(1). Moreover, "[a] defendant may be held liable for punitive damages *only if the trier of fact*, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence." *Id.* § 768.72(2) (emphasis added). Accordingly, it does not appear that default judgment on the issue of punitive damages is proper on Plaintiff's punitive damages claim absent a trial/evidentiary hearing first. *See, e.g.*, *Weinstock v. Harvey*, No. 8:19-cv-2979-T-33AEP, 2020 WL 6689751, at *6 (M.D. Fla. Nov. 13, 2020), *report and recommendation adopted*, 2020 WL 7041550 (M.D. Fla. Dec. 1, 2020), *amended*, 2021 WL 229575 (M.D. Fla. Jan. 22, 2021) ("[W]ithout a trial entry of a default judgement awarding punitive damages would be void."); *see also Espirito Santo Bank v. Rego*, 990 So. 2d 1088, 1091 (Fla. Dist. Ct. App. 2007) ("An allegation of fraud, on its own and without any evidentiary support, does not satisfy the requirements of section 768.72, Florida Statutes[.]").

In sum, because Plaintiff fails to adequately explain its damages calculations, and an evidentiary hearing and/or trial will be required on the punitive damages claim, the undersigned will recommend that, with regard to damages, Plaintiff's motion be denied without prejudice and deferred until liability is established, and

at that time, the Court undertake further proceedings, to include an evidentiary hearing and/or trial on the issue of damages.[7]   *Cf. Weinstock v. Harvey*, No. 8:19-cv-2979-T-33AEP, 2021 WL 229575, at *2 (M.D. Fla. Jan. 22, 2021) (addressing punitive damages after denial on initial motion for default judgment, after subsequent briefing, and an evidentiary hearing held thereon); *see also Arain v. Double R. Remodeling, Inc.*, No. 6:08-cv-2036-Orl-28KRS, 2010 WL 1252179, at *4 (M.D. Fla. Mar. 5, 2010), *report and recommendation adopted*, 2010 WL 1252178 (M.D. Fla. Mar. 26, 2010) (finding liability on default judgment and thereafter holding evidentiary hearing on damages).

## IV.   RECOMMENDATION.

For the reasons discussed herein, it is respectfully **RECOMMENDED** that the Court:

1.   **GRANT in part** Plaintiff's Motion for Default Judgment (Doc. No. 18).

2.   **FIND** liability established on Counts I, II, and III of the complaint (Doc. No. 1).

3.   **DENY without prejudice** Plaintiff's Motion (Doc. No. 18) in all other respects, and **DEFER** ruling on the issue of damages.

---

[7] The undersigned also notes that Plaintiff provides no explanation, calculation, nor legal authority for its request for prejudgment interest.   *See* Doc. No. 18, at 12.

4.    **REFER** the issue of damages to the undersigned to conduct all appropriate proceedings, up to and including an evidentiary hearing, and thereafter issue a report and recommendation on entitlement to and quantification of damages.

<u>**NOTICE TO PARTIES**</u>

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions.  Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   11th Cir. R. 3-1.

Recommended in Orlando, Florida on June 16, 2025.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy